**In Re: Joint Petition for the APPOINTMENT OF A BORDER COMMISSION to Ascertain or Establish the Boundary Line Between Adams Township and Cranberry Township in Butler County, Pennsylvania**

**Appeal of: Rocco J. Viola, Jr. and Patricia Viola.**

Commonwealth Court of Pennsylvania.

Argued Feb. 6, 2007.
Decided March 12, 2007.

See also 838 A.2d 21.

Robert W. Kennedy, Jr., Pittsburgh, for appellants.

Charles F. Flach, III, Butler, for appellee, Adams Township.

Vicki L. Beatty, Pittsburgh, for appellee, Cranberry Township.

BEFORE: COLINS, Judge, and FRIEDMAN, Judge, and KELLEY, Senior Judge.

OPINION BY Judge FRIEDMAN.

Rocco J. Viola, Jr. and Patricia Viola (together, Viola) appeal from the April 17, 2006, order of the Court of Common Pleas of Butler County (trial court), which adopted the "Report of Border Commission" (Report) and denied Viola's exceptions to the Report. We affirm.

Adams Township and Cranberry Township filed a joint petition for the appointment of a Border Commission with the trial court. The trial court appointed the Border Commission to ascertain or establish the boundary line between Adams Township and Cranberry Township for its entire length, except across the Viola property, pursuant to section 303 of The Second Class Township Code.[1] In a prior proceeding, the Border Commission determined the boundary line across the Viola

property, and this court affirmed that determination in In re Petition of Viola, 838 A.2d 21 (Pa.Cmwlth.2003) (Viola I).[2] The trial court order stated that, if the Border Commission could not ascertain the remaining boundary line with certainty, the Border Commission was to establish the boundary line.[3]

The Border Commission gave public notice of a hearing on the matter and provided notice by mail to all affected landowners. The Border Commission held the hearing on May 5, 2005. At the hearing, the townships entered into the record stipulated facts and testimony from the prior proceeding. The townships stipulated that: (1) the townships made very extensive attempts to establish the exact location of the 1854 boundary line without success; (2) because of the indefiniteness of the line, the townships have accepted by mutual consent that certain areas through which the boundary line may or may not pass, depending on the actual location of the line, are in one or the other township; and (3) based on the mutual consents, the townships provide municipal services to certain areas, and school districts accept certain areas within their territorial limits.

The townships proposed a boundary line, which was not a straight line. Except for Viola, all entities appearing at the hearing approved the proposal. Counsel for Viola had the following exchange with the chairperson of the Border Commission:

1. Act of May 1, 1933, P.L. 103, as amended, 53 P.S. § 65303. Section 303 provides, in part, as follows:

Upon application by petition [to ascertain the lines or boundaries of townships], the court shall appoint three impartial citizens as commissioners ... to inquire into the request of the petition. After giving notice ..., the commissioners shall hold a hearing and view the lines or boundaries; and they shall make a plot or draft of the lines and boundaries proposed to be ascertained and established if they cannot be fully designated by natural lines or boundaries. The commissioners shall make a report to the court, together with their recommendations. Upon the filing of the report, it shall be confirmed nisi....

53 P.S. § 65303.

2. In the prior proceeding, the boundary line across Viola's property was determined from deeds and a survey in the chain of title. At the time, various parties petitioned the trial court to also determine the entire length of the boundary line between Adams Township and Cranberry Township, but the trial court denied the petitions. This court found no abuse of discretion in this regard. Viola I.

3. In 1854, all of Butler County was subdivided into townships, and the boundary lines were established by wooden stakes placed one mile apart. However, the wooden stakes have deteriorated and are no longer in existence.

[Counsel]: Just as a comment, in the prior Border case, which we were a party, I think the testimony, and it's true, that all the surveyors and engineers could not agree on the location of the line, but I think the one thing they did agree on is the line is a straight line and that's not what is shown here.

[Chair]: .... [I] agree with you. I think it was a straight line to start with if anybody could figure out where the straight line was.

[Counsel]: .... And, again, all the experts agreed that there was a straight line so that's my comment, and I wanted to be sure the testimony was incorporated in this proceeding.

[Chair]: Well, the evidence in that hearing, as you well know, was evidence solely for the one parcel, for Mr. Viola's parcel, had nothing to do with any of the rest of the line.

[Counsel]: I understand.

(R.R. at 36–37.) The attorneys for Cranberry Township and Adams Township then pointed out that the experts in the prior proceeding did **not** testify that the entire boundary line between the townships was a straight line. (R.R. at 37–38; *see* S.R.R. at 66b–68b, 70b–71b.)

On June 10, 2005, the Border Commission issued its Report, recommending that the trial court adopt the boundary line proposed by the two townships as the boundary line between Adams Township and Cranberry Township. Viola filed exceptions, but, by order dated April 17, 2006, the trial court adopted the Report and denied Viola's exceptions. Viola now appeals to this court.[4]

Viola argues that the record in the prior proceeding establishes that the entire boundary line between the townships was a straight line, and, thus, when the Border Commission could not ascertain the loca-

tion of the original straight line, the new boundary line established by the Border Commission had to be a straight line.[5] However, the record in the prior proceeding does not establish that the entire boundary line between the townships was a straight line.

David C. Baker, Cranberry Township's Engineer, testified that the 1853 board of viewers report, accepted in 1854 as definitive, states that the board "varied from mathematical [straight] lines." (S.R.R. at 66b–67b); *see also Viola I.* Howard G. Hartman, Seneca Valley School District's Engineer, testified that the 1853 board of viewers report contains "several statements that the surveyors apparently did alter some lines to favor people...." (S.R.R. at 71b); *see also Viola I.* Hartman also testified as follows:

A.  .... We found an act of the legislature dated 1863 that started at a point called the Nesbit/Marshall farm line and ... terminated on what was called the Cranberry/Adams Township line.

Q.  What was the purpose of this act of the legislature?

A.  The purpose was to **notch out a little piece of the corner of the township** near the Allegheny County line for purposes unknown.

(S.R.R. at 68b) (emphasis added.) Thus, the factual premise of Viola's argument is incorrect. The original boundary line was **not** a straight line.

Accordingly, we affirm.

*ORDER*

AND NOW, this 12th day of March, 2007, the order of the Court of Common Pleas of Butler County, dated April 17, 2006, is hereby affirmed.

---

**4.** This court may not disturb the determination of the Border Commission except with respect to errors of law or the absence of competent evidence. *Viola I.* If a reviewing court is dissatisfied with a report, the solution

is to refer the matter back to the commissioners for another report. *Id.*

**5.** Although Viola sets forth four issues in the Statement of Questions Involved, this is the only argument set forth in Viola's brief.